The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Donald R. HALSTEAD, Defendant–Appellant.

No. 92CA0300.

Colorado Court of Appeals, Div. III.

March 10, 1994.

Rehearing Denied April 7, 1994.

Certiorari Denied Oct. 11, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Katherine M. Clark, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Donald Halstead, appeals from the judgments of conviction entered upon jury verdicts finding him guilty of first degree sexual assault, first degree assault, burglary, and criminal mischief. We affirm in part, vacate in part, and remand with directions.

The charges stem from an incident during which defendant, armed with a knife, sexually assaulted his neighbor after entering her home with her permission but on false pretenses. As the victim struggled against him, he cut her hand with the knife. Following his conviction on the charges listed, defendant was sentenced to consecutive sentences for the first degree assault and sexual assault charges, to run concurrently with concurrent sentences for burglary and criminal mischief.

## I.

■ Defendant first asserts that the trial court erred by permitting the prosecution to play a videotape of the victim's statement to the police. Specifically, defendant contends that, although portions of the tape may have been admissible to rebut specific prior inconsistent statements used by defendant to impeach the victim's direct testimony, most of the tape was irrelevant and constituted hearsay. Further, defendant argues, the court erred by allowing the videotape to be shown again to the jury during deliberation. We disagree.

The record indicates that, during the victim's cross-examination, defense counsel attempted to impeach the victim's testimony with her prior statements to the police, including her statements in the videotaped interview. The prosecution requested permission to play the videotape as redirect examination. Over defendant's objection, the court—after redacting certain portions of the tapes as irrelevant—allowed the tapes to be shown to the jury.

## A.

■ The rule of completeness does not extend to permit the admission of irrelevant portions of a document to explain the portion already in evidence. *See People v. DelGuidice*, 199 Colo. 41, 606 P.2d 840 (1979). Instead, the determination of how much of a prior consistent statement is admissible is based upon its relevance and probative use. *People v. Tyler*, 745 P.2d 257 (Colo.App. 1987).

Thus, if the impeachment or charge of fabrication goes only to specific facts, then only consistent statements regarding those specific facts are relevant and admissible. *See People v. DelGuidice, supra*. If, however, the impeachment was general and not limited to specific facts, the consistent statements are relevant and probative. *People v. Tyler, supra*.

■ Here, the record reveals that, unlike the situation in *People v. DelGuidice, supra*, the impeachment did not relate to one specific statement, but was a general attack on the victim's credibility. Defendant's cross-examination included over 30 references to the victim's statements to the police and covered nearly every aspect of the offense. *See People v. Tyler, supra*, 745 P.2d at 259 ("[i]f the credibility of a witness is at issue, the jury should have access to all the relevant facts, including consistent and inconsistent statements").

Also, contrary to defendant's assertion, the videotape was not hearsay. If prior consistent statements are offered, as here, to rebut a charge of recent fabrication, the statements are not hearsay. CRE 801(d)(1)(B).

### B.

◼ We also disagree with defendant that the trial court abused its discretion when it allowed the jury to view the tapes during deliberation.

◼ A trial court may allow the jury to review a videotape of a witness' previous statements under circumstances that will assure that such statements will not be given undue weight or emphasis. "The precise procedure to be followed to assure this result lies within the trial court's sound discretion," but the trial court must supervise the procedure adopted. *People v. Montoya,* 773 P.2d 623, 626 (Colo.App.1989).

Here, the trial court allowed the tapes to be viewed with counsel and the court present. In addition, the trial court ensured that only the same portions of the tapes were shown to the jury during deliberation as had been shown during trial.

Moreover, in response to the defendant's objection at trial that showing the videotape would overemphasize that evidence, the trial court reasoned that:

This is not a situation where we had one witness who came in and testified one way and another witness who came in and testified in another way so that the jury is having to resolve credibility issues, one witness as compared to the other. The testimony to us is just the one and only version that was presented of the facts to the jury. Under these circumstances, I don't think that this would give undue weight to the testimony of one witness [while] at the same time [ignoring] the testimony of some other witnesses.

We agree with the trial court and find no abuse of discretion.

### II.

### A.

◼ Defendant's primary contention on appeal is that his multiple felony convictions for first degree assault, first degree sexual assault, and first degree burglary cannot stand under the merger doctrine as set forth in § 18–1–408(1)(a), C.R.S. (1986 Repl.Vol. 8B), and the double jeopardy clauses of the Colorado and United States Constitutions. We agree that pursuant to § 18–1–408(1)(a), burglary and sexual assault are included offenses of first degree assault under § 18–3–202(1)(d), C.R.S. (1986 Repl.Vol. 8B), and as a consequence, one of those convictions must be vacated.

A person commits first degree assault under § 18–3–202(1)(d) if:

Acting either alone or with one or more persons, he commits or attempts to commit murder, robbery, arson, burglary, escape in the first degree, kidnapping in the first degree, sexual assault in the first or second degree, or class 3 felony sexual assault on a child and in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the serious bodily injury of a person, other than a participant in the commission or attempted commission of the crime, is caused by anyone.

Here, either the sexual assault or the burglary functions as a predicate offense for the first degree assault conviction.

A defendant may be convicted of multiple offenses arising out of a single transaction if such defendant has violated more than one statute, but he or she cannot be convicted of both a greater and lesser included offense. Section 18–1–408(1)(a); *see Armintrout v. People,* 864 P.2d 576 (Colo.1993).

Section 18–1–408(5)(a), C.R.S. (1986 Repl. Vol. 8B) "defines a lesser included offense as one 'established by proof of the same or less than all the facts required to establish the commission of the offense charged.' " *Armintrout v. People, supra,* 864 P.2d at 579. The doctrine of merger treats an offense as lesser included when proof of the essential elements of the greater offense necessarily establishes the elements required to prove the lesser offense. *Armintrout v. People, supra.*

◼ Thus, under statutory and common-law merger, as well as double jeopardy principles, if each offense requires proof of a fact not required by the other offense, the offenses are sufficiently distinguishable. "In order to determine whether one offense is

included in another, we compare the elements of the statutes involved and not the evidence shown at trial." *Armintrout v. People, supra* 864 P.2d at·579; *see also People v. Griffin,* 867 P.2d 27 (Colo.App.1993). Under this test, the predicate offense for a first degree assault conviction under § 18–3–202(1)(d) appears to fit the definition of a lesser included offense under § 18–1–408(5)(a).

In *People v. Moore,* 860 P.2d 549 (Colo. App.1993), the majority of a division of this court concluded that, in order to convict a defendant of first degree assault under § 18–3–202(1)(d), the prosecution was required to prove each and every element of a predicate felony, or attempted predicate felony, plus the additional element of the occurrence of serious bodily injury, and that, therefore, the predicate offense became a "lesser included offense" of the crime of "felony" first degree assault. That was so, concluded the majority, despite the fact that, because of the existence of provocation, the predicate offense—in that case a class 3 felony sexual assault—merged into a less serious grade of felony which carried a less severe penalty.

The *Moore* holding, with a somewhat less anomalous result, was applied in *People v. Griffin, supra,* in which the majority of the panel concluded that, under the circumstances of that case, attempted aggravated robbery necessarily merged into the first degree assault.

Defendant urges us to follow those decisions here. We agree that, under existing law, it appears that we are required to do so. We do so reluctantly here, however, because it requires vacating a conviction for an offense carrying a more severe penalty than the. "felony" first degree assault conviction.

Applying § 18–1–408(5)(a) in the context of felony first degree murder pursuant to § 18–3–102(1)(b), C.R.S. (1986 Repl.Vol. 8B), our supreme court held that the charge of murder based upon the death of the victim of the felony, "requires proof of the very same elements essential to the charge of [the predicate felony]." *People v. Bartowsheski,* 661 P.2d 235, 246 (Colo.1983). Thus, under that statute, the predicate felony is a lesser included offense which merges into the murder

conviction. *See also Boulies v. People,* 770 P.2d 1274 (Colo.1989) (applying the judicially created merger doctrine to felony murder and finding that the predicate felony must merge into the murder charge).

As the *Moore* court accurately pointed out, the provisions of § 18–3–202(1)(d) and § 18–3–102(1)(b) are substantively identical. The linchpin of the *Moore* analysis is thus the interpretation of § 18–1–408(5)(a) in *People v. Bartowsheski, supra,* and the rationale of *Boulies v. People, supra:* Like felony murder, "felony" first degree-assault requires proof of the very same elements essential to the charge of the predicate felony. Citing § 18–1–408, the *Moore* court reasoned that because the defendant "could not have been convicted of first degree assault as charged without proof that he committed [a predicate felony], the latter offense was one which was included within the first degree assault charge," and defendant could not be convicted of both offenses. *See People v. Moore, supra,* 860 P.2d at 553.

■ Although this logic is impeccable, and the result inevitable given the analyses in *People v. Bartowsheski, supra,* and *Boulies v. People, supra,* the result is anomalous. Although the application of this reasoning to felony first degree murder almost always results in the less serious crime merging into the more serious crime, this is not always so with "felony" first degree assault, as some of the predicate offenses listed are of a greater severity than first degree assault, including, inexplicably, murder.

Accordingly, the merger of the predicate offense into the inclusive offense of "felony" first degree assault can result in the more serious offense being merged into the less serious offense. Thus, contrary to common sense, an included offense under § 18–1–408(5)(a) is not necessarily a less serious crime. *Compare People v. Moore, supra,* 860 P.2d at 556 ("By definition, lesser included crimes have always been crimes of lesser· seriousness, not merely crimes with fewer included elements." (Rothenberg, J., dissenting)) *with People v. Henderson,* 810 P.2d 1058, 1067 (Colo.1991) ("[T]he applicability of the merger rule turns on an analysis of the

elements of the [offenses] and not on the maximum penalties authorized for those respective crimes." (Quinn, J., dissenting)).

As first degree sexual assault under § 18–3–402, C.R.S. (1986 Repl.Vol. 8B) is a higher degree of felony, and carries a greater penalty, we must assume that the General Assembly intended it to be a more serious offense than "felony" first degree assault. Yet here, it functions as a lesser included offense. Absurd results are not favored, *see People v. Pipkin,* 762 P.2d 736 (Colo.App.1988), and we agree with the People that this result could not have been intended by the General Assembly when it enacted § 18–3–202(1)–(d). This is evident when considering the manner in which included offenses are usually treated under Colorado law.

A fundamental purpose of § 18–1–408 is to provide notice to a defendant of a lesser offense for which he or she has not been charged but for which, if the evidence supports such instruction to the jury, he or she could be convicted. Either the prosecution or the defense is entitled to an instruction on a lesser included offense whenever there is a "rational basis for the jury to acquit the defendant of the original offense charged and convict the defendant of the lesser offense." *See People v. Skinner,* 825 P.2d 1045, 1046 (Colo.App.1991).

Section § 18–1–408(1)(a) specifically precludes a jury from convicting on the original charged offense and also convicting of a lesser included offense. Thus, the jury should be instructed that it may not consider the lesser included offense until it has decided to acquit on the original offense. *People v. Skinner, supra; COLJI–Crim.* Nos. 38:06 & 38:07 (1983). And, if the jury should nonetheless convict of both a greater and a lesser included offense, a court should vacate the conviction of the lesser offense. *See People v. Hickam,* 684 P.2d 228 (Colo.1984).

Contrary to these instructions, however, as a practical matter, the jury frequently will not be able to determine guilt or innocence on the felony first degree murder or felony first degree assault charge without considering first whether the "included" predicate offense has been proven. Moreover, to interpret § 18–1–408 to require the court to vacate the more serious offense if the jury improperly returns a conviction on both turns the law of "lesser" offenses on its head. *Cf. People v. Driggers,* 812 P.2d 702 (Colo.App.1991) (classifying "greater" and "lesser" offenses in terms of severity of allowable penalties).

As the People argue, perhaps one answer is that the terms of § 18–1–408 simply were not intended to apply if the "included" offense is not also a less serious offense. *See* Remington & Joseph, *Charging, Convicting, & Sentencing the Multiple Criminal Offender,* 1961 Wisc.L.Rev. 528, 533 ("Once it is found that the more serious offense contains all the elements of the less serious, the latter is an included offense").

Certainly, the application of § 18–1–408(5)(c), C.R.S. (1986 Repl.Vol. 8B) (an offense is included when it differs from the offense charged only in that a less serious injury or risk of injury or lesser kind of culpability is sufficient to establish its commission) is limited to situations in which the "included offense" is less serious or carries a lesser degree of culpability. *See People v. Raymer,* 662 P.2d 1066 (Colo.1983) (aggravated robbery of same victim is lesser included offense of felony murder under § 18–1–408(5)(c)).

Hence, if an included offense under § 18–1–408 *must* be a less serious offense, then, if the predicate offense is the more serious crime, the offenses would be analyzed under the test applied in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and as set forth in *People v. Allen,* 868 P.2d 379 (Colo.1994) and *People v. Rael,* 199 Colo. 201, 612 P.2d 1095 (Colo. 1980). *See People v. Allen,* 787 P.2d 174, 175 (Colo.App.1989) ("Except for the rule concerning lesser included offenses," the *Blockburger* test is the applicable test.). The *Bartowsheski–Boulies* analyses would not apply and anomalous results, such as here or in *Moore,* would not occur.

In any event, although we do not dispute the People's logic, at present the law in Colorado is to the contrary. The predicate felony necessary to establish the commission of felony murder is a lesser included offense,

as defined by § 18–1–408(5)(a), as one established by proof of the same or less than all the facts required to prove the charged offense of felony murder. Accordingly, we are compelled to reach the same result concerning the first degree assault statute. *See People v. Moore, supra; People v. Griffin, supra; cf. People v. Armintrout, supra* (Section 18–1–408(5)(a) is similar in application to the judicially created doctrine of merger).

Because of the similarities between felony murder and "felony" first degree assault, we also note that under various merger analyses, jurisdictions have been split for decades as to whether convictions of both felony murder and the underlying felony are permissible. *See Model Penal Code* at 107 (1985) (Comment to § 1.07); *compare, e.g., People v. Berzups,* 49 N.Y.2d 417, 426 N.Y.S.2d 253, 402 N.E.2d 1155 (1980) (felony murder and the predicate felony are, substantively and generically, entirely distinct and disconnected offenses) *with Newton v. State,* 280 Md. 260, 373 A.2d 262 (1977) (holding, after extensive review of conflicting authority, that the predicate felony merges into the felony murder charge).

Some courts have held that the predicate felony is not an "essential element" of felony murder, but is only representative of malice or intent. *See State v. Chambers,* 524 S.W.2d 826 (Mo.1975) (underlying felony serves to prove the necessary intent for the murder charge); *People v. Tutuska,* 19 Misc.2d 308, 192 N.Y.S.2d 350, 357 (1959), *aff'd,* 11 A.D.2d 906, 205 N.Y.S.2d 1006 (1960); *see also People v. Lytton,* 257 N.Y. 310, 178 N.E. 290 (1931) (Cardozo, J.) (proof of predicate crime is only evidence of felonious intent, it does not displace the intent element itself, and while it characterizes the degree of culpability, it does not change the identity of the crime); *cf. People v. Hickam, supra* (the element of causing a death during the commission of a felony supplies the mental culpability element for first degree murder).

It is also worthy of consideration in this analysis that the first degree assault statute is *unlike* the first degree murder statute in that a defendant who is convicted of "felony" first degree assault under § 18–3–202(1)(d) which he or she has caused during the commission of certain predicate felonies must, according to § 18–3–202(2)(d), C.R.S. (1986 Repl.Vol. 8B), be sentenced pursuant to § 16–11–309, the crime of violence statute. This appears to us, by its terms, as an explicit indication by the General Assembly that, at least under those circumstances, it intended separate punishments for first degree assault under § 18–3–202(1)(d) and the predicate offense. *Cf. Boulies v. People, supra.*

Because we have determined, however, that the multiple felony convictions cannot stand, we need not determine the validity of cumulative punishments under double jeopardy principles. *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *People v. Henderson, supra. See Armintrout v. People, supra* (In the absence of legislative authorization, multiple punishments for a greater and lesser included offense are prohibited.).

### B.

■ The People urge that, if we hold that defendant's multiple convictions cannot stand, the choice as to which conviction should be vacated should be theirs. Relying on *People v. Driggers, supra,* they assert that "the better reasoned remedy, when a defendant is convicted of both a greater and lesser offense is that the conviction of the lesser offense should be vacated, and the conviction of the greater affirmed."

We do not disagree that, generally, the conviction of the lesser included offense should be vacated. *See People v. Hickam, supra.* However, here, the included offenses pursuant to § 18–1–408(1)(a) are the predicate offenses of first degree sexual assault and burglary. Therefore, it is one of those predicate offenses which must be vacated. *See People v. Bartowsheski, supra; People v. Moore, supra.*

Defendant suggests that, under these circumstances, we must vacate the conviction for first degree sexual assault. He argues that the evidence established that the serious bodily injury to the victim occurred during the sexual assault, and thus, it is that offense which logically should be vacated. We agree.

*See Callis v. People,* 692 P.2d 1045, 1054 (Colo.1984) ("[When] a defendant is convicted of multiple [predicate felonies], that felony which most directly contributes to the death of the victim should serve as the essential element of the felony murder conviction.").

### C.

■■■ Finally, we agree with defendant that the imposition of consecutive sentences for first degree sexual assault and first degree assault was error. The trial court reasoned that it was required to do so under § 16–11–309(1)(a), C.R.S. (1986 Repl.Vol. 8A) which provides that a person convicted of two or more "separate crimes of violence arising out of the same incident shall be sentenced so that sentences are served consecutively rather than concurrently." That statute, however, is not controlling here.

Regardless of the fact that a crime is defined as a crime of violence in § 16–11–309(2), C.R.S. (1986 Repl.Vol. 8A), unless crime of violence sentencing is specifically required by express statutory provision, *see People v. Terry,* 791 P.2d 374 (Colo.1990), a separate crime of violence count must be separately pled and proved. *People v. Close,* 867 P.2d 82 (Colo.App.1993); § 16–11–309(4), C.R.S. (1986 Repl.Vol. 8A). First degree assault is a statutory crime of violence. *See* § 18–3–202(1)(d). However, although first degree sexual assault is defined as a crime of violence, *see* § 16–11–309(2), it was neither charged nor proven here as a separate count.

Thus, defendant was not convicted of two separate crimes of violence, and the trial court incorrectly assumed that it was required to impose consecutive sentences. *See also* § 18–3–402(4), C.R.S. (1986 Repl.Vol. 8B) (sentencing under this provision shall be pursuant to § 18–1–105(9)(c), C.R.S. (1986 Repl.Vol. 8B) and not under crime of violence provisions of § 16–11–309(2)). By virtue of our holding above, however, the first degree sexual assault conviction is vacated. Thus, the error is harmless.

Accordingly, the judgments of conviction for first degree assault, first degree burglary, and criminal mischief are affirmed. The judgment of conviction for first degree sexual

assault is reversed, and the cause is remanded with directions to the trial court to vacate that judgment along with the corresponding sentence.

TAUBMAN, J., concurs.

CRISWELL, J., specially concurs.

Judge CRISWELL specially concurring.

I agree with the result reached by the majority, and I agree with most of the analysis contained within that opinion. I write separately, however, because I would rely more upon the language employed by the Colorado General Assembly than upon prior jurisprudence.

Section 18–1–408(5)(a), C.R.S. (1986 Repl. Vol. 8B) states that, if another offense is proven by "the same or *less* than all of the *facts* required to establish the commission of the offense charged," that offense is "included within the charged offense." (emphasis supplied) And, § 18–1–408(1)(a), C.R.S. (1986 Repl.Vol. 8B) prevents conviction of "more than one offense" if one is "included" within the other "as defined in subsection (5)."

It is to be noted that, while the term "less" or "lesser" might generally bear at least two differing interpretations when reference is made to a "lesser included" offense, § 18–1–408(5)(a) uses this term in only *one* sense. It refers to an "included" offense as one that is proven by proof of "less than all the *facts*" than are needed to be proven in order to convict of the offense charged. Neither § 18–1–408(1)(a) nor § 18–1–408(5)(a) uses the term "less" in reference to the severity of sentence that may be imposed for either the charged or the included offense.

In this context, I agree that the term "facts" refers to the essential factual circumstances (or the factual elements of the offense) that must be proven to support a conviction. Hence, all that is required in order to be an "included" offense within the definition of § 18–1–408(5)(a) is that the evidence *necessary* to prove the charged offense also, of necessity, prove the included offense. If such is the case, § 18–1–408(1)(a) prohibits conviction of more than one offense.

Here, then, because the People chose to charge defendant with the commission of felony first degree assault, which does not require proof of a specific intent to cause serious bodily injury, but which does require proof of the commission, or an attempt to commit, one of the felonies described in § 18–3–202(1)(d), C.R.S. (1986 Repl.Vol. 8B), proof of all of the necessary factual circumstances of such assault necessarily required proof of all of the elements of the underlying predicate offenses. That being the case, such predicate offenses were "included" within the crime of first degree assault, as that term is defined in § 18–1–408(5)(a), and the stricture of § 18–1–408(1)(a) must be applied. And, I would reach this conclusion, based upon the language used by the General Assembly in this statute, even without the prior jurisprudence contained in *Boulies v. People*, 770 P.2d 1274 (Colo.1989); *People v. Bartowsheski*, 661 P.2d 235 (Colo.1983); and *People v. Moore*, 860 P.2d 549 (Colo.App. 1993).

Finally, it seems evident to me that, in adopting § 18–3–202(1)(d), the General Assembly intended to impose a greater penalty upon those persons committing the offenses listed in that statute, if an assault occurs and serious bodily injury results during the commission of one of those offenses. This legislative goal could have been accomplished by the adoption of a sentence enhancing statute, in which event the problem facing us here would not have been presented. *See Armintrout v. People*, 864 P.2d 576 (Colo.1994). The General Assembly chose not to take this course of action, however.

Rather, with full knowledge of the provisions of § 18–1–408(1)(a) and § 18–1–408(5)(a), it chose to create an entirely new crime. And, we are required to apply the lesser included offense statute to that statutory offense in the same manner that we must apply it to all other offenses. Any anomaly resulting from our application, therefore, is caused by the specific language selected to express the legislative intent. While we may be reluctant to apply this plain language, we, nevertheless, must do so.